## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| JAIME SOILEAU, )<br><br>    Plaintiff, )<br><br>v. )<br><br>EASTSIDE BOAT SHOP,<br>FRANK P. COFFIN II, and<br>MANDY RAMSDELL-COFFIN )<br><br>    Defendants. ) | Docket No. _____ |

NOW COMES Jaime Soileau ("Plaintiff" or "Soileau"), by and through undersigned counsel, and submits the following Complaint against Defendants Eastside Boat Shop ("EBS"), Frank Coffin ("Mr. Coffin"), and Mandy Ramsdell-Coffin ("Ms. Coffin") (collectively, "Defendants"):

### PARTIES

1.      Plaintiff Soileau (pronounced "swallow") is an individual residing in the City of LaRose, State of Louisiana.

2.      Defendants Mr. Coffin and Ms. Ramsdell-Coffin are, upon information and belief, residents of the Town of Machiasport, County of Washington, State of Maine.

3.      Defendant EBS is, upon information and belief, a corporation organized and existing pursuant to the laws of the State of Maine with its principal place of business in the Town of Machiasport, State of Maine.

4.      Upon information and belief, Mr. Coffin is President of Defendant EBS and directs its operations.

5.      Upon information and belief, Ms. Ramsdell-Coffin is the Secretary of Defendant EBS, who manages its finances, and receives and processes payments from its customers.

## JURISDICTION

6.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## FACTS COMMON TO ALL COUNTS

8.      Plaintiff Soileau works in the maritime construction and commercial fishing industries on the Gulf Coast of Louisiana.

9.      In 2020, Soileau specifically identified and contacted Defendants because they were the only boatbuilder who had the mold for a Libby-designed, commercial-fishing hull, which was Soileau's preferred model.

10.      Soileau decided to wait on purchasing a newly-built vessel from Defendants until he could afford a larger vessel.

11.      In 2022, Coffin reach out to Soileau and represented to him that ESB had an open spot in its work schedule that would allow them to start Soileau's boat if he was ready.

12.      By this time, Soileau had saved up enough money and, relying on Coffin's representations, traveled to Maine to discuss details of the proposed build with Defendants.

13.      Defendants represented that they could build a complete boat, from start to finish, including engines, for $459,800.00 ("the Build").

14.    All parts and materials were included in Defendants' estimate except for the propeller and navigation electronics, which Soileau was responsible for purchasing separately.

15.    Soileau agreed to this arrangement and wired Defendants $400,000.00 in August 2022, which Defendants accepted and deposited.

16.    In September 2022, Defendants represented to Plaintiff that they had purchased most of the parts and materials for the Build.

17.    Defendants also represented to Plaintiff at that time that the boat would be complete in time for the July 2023 fishing season.

18.    After making numerous representations for delaying the build, Defendants finally started the Build in September 2022, one year after Plaintiff paid them.

19.    The bare hull was completed in January 2024, but work largely stopped thereafter.

20.    Between January and late spring 2024, Defendants continued making different representations to Soileau for its delays.

21.    In spring 2024, Plaintiff asked whether Defendants had purchased the generator and air conditioners for the boat.

22.    Defendants responded that they had spent almost all of Plaintiff's money and required additional funds.

23.    Plaintiff purchased the generator and air conditioner separately and had them shipped to Defendants' boatyard.

24.    These items were supposed to be included in Defendants' $459,800.00 estimate, and instead Soileau had to spend an additional $21,500 on the generator and air conditioners.

3

25.    Notwithstanding Soileau's purchase of these items, which should have been paid for with his original funds, Defendants still claimed to require another tranche of $200,000.00 to continue the build.

26.    Because the boat was nowhere near complete after approximately a year and a half of work, and because Defendants were seeking a significant amount of money to continue working, Plaintiff decided he wanted another boatyard to finish the Build.

27.    Plaintiff told Defendants to stop all work on the boat and he would arrange to have the unfinished boat transported.

28.    Thereafter, Defendants stopped responding to any of Plaintiff's communications.

29.    Plaintiff was forced to retain legal counsel to negotiate the release of his unfinished boat in exchange for an additional payment of $20,000.00 to Defendants, who did not specify either what this new money was for or provide an accounting for how his previous $400,000 had been spent.

30.    In October 2024, Soileau paid the additional $20,000.00 and moved the unfinished boat to Taylored Boats, to be finished by Peter Taylor ("Taylor")

31.    Soileau also hired marine surveyor Jason Hillman ("Hillman") to conduct a complete survey of the vessel's condition at the time of its arrival at Taylored Boats.

32.    Taylor and Hillman opined that the boat had significant deficiencies that had to be fixed before the build could continue, and that Defendants had grossly underquoted Plaintiff for the complete build of a brand-new boat.

33.    Additionally, Taylor and Hillman estimate that Defendants had spent less than $100,000.00, inclusive of parts, materials, and labor, plus approximately $150,000.00 on the engine, before it was moved to Taylored Boats.

34.    Despite Defendants' representations that they had spent the entire $400,000.00 wired by Soileau, approximately $150,000.00 remains unaccounted for.

35.    Defendant Ms. Ramsdell-Coffin had knowledge of and control over the foregoing due to her role handling the finances of Defendant ESB.

36.    Once Taylor began working on Soileau's unfinished vessel, he discovered the extent of Defendants' poor workmanship.

37.    Taylor had to perform significant remediation work to make the hull seaworthy.

38.    First, he had to tear up the forward decks and resecure the bow thruster.

39.    He then reframed the cabin deck to ensure the engine was properly bedded, secured, and aligned and with adequate space below the deck.

40.    He also removed and reinstalled the engine and fuel tanks in accordance with applicable marine industry construction standards.

41.    Finally, he repaired and installed the correct configuration of the hull's framing because, among other issues, the existing bolts were found to be hand-loose, poorly installed, and too few in number.

42.    The deficiencies in the hull's framing would have prevented the Vessel from enduring the rigors of commercial fishing such that the hull would have started coming apart once the Vessel was underway.

43.    Thus far, Soileau has paid Taylor approximately $84,000.00 to conduct the remediation work.

44.    The remediation work is not yet complete.

45.    Soileau will have to expend additional funds to have Taylored Boats finish the repair work and complete the build.

## <u>COUNT I – BREACH OF CONTRACT</u>

46.     Soileau repeats and re-alleges Paragraphs 1 through 45 as if fully set forth herein.

47.     In 2022, Soileau entered into a contract with Defendants pursuant to which Defendants were to build a complete fishing vessel in exchange for payment from Soileau.

48.     Soileau performed in accordance with this contract when he paid $400,000.00 up front for his boat, intending to make the remaining payment once the boat was closer to completion, as discussed between the parties.

49.     Defendants breached the contract by failing to complete the boat and failing to do so in a proper and workmanlike manner.

50.     As a direct and proximate result of Defendants' breach, Soileau has incurred damages including, but not limited to, money paid to Defendants specifically for use on Soileau's project that was used for other purposes, costs associated with hiring a new boatyard to complete the project and remedy Defendants' poor craftsmanship, and costs associated with hiring a marine surveyor to review the damage caused by Defendants to the boat.

WHEREFORE Plaintiff Soileau respectfully requests this Court enter judgment in his favor and against Defendants on Count I of this Complaint, in an amount according to proof, together which his costs and attorney's fees and such other and further relief this Court finds just and proper.

## <u>COUNT II – BREACH OF IMPLIED WARRANTY OF WORKMANLIKE PERFORMANCE</u>

51.     Plaintiff repeats and realleges Paragraphs 1 through 50 as if fully set forth herein.

52.    Defendants owed Soileau a warranty of workmanlike performance with respect to the construction of his fishing vessel and agreed to perform this work in a diligent and workmanlike manner.

53.    Defendants failed to perform the work in a diligent and workmanlike manner, below the standard of care expected in the industry.

54.    The work completed by Defendants was so deficient that it had to be completely redone to ensure the Vessel was seaworthy.

55.    Defendants' actions as aforesaid constitute a breach of the implied warranty of workmanlike performance.

56.    As a direct and proximate result of Defendants' breach of warranty as aforesaid, Soileau has incurred monetary damages, including, but not limited to, money paid to Defendants that was not spent on his build, costs associated with hiring a new boatyard to complete the project and remedy Defendants' poor craftsmanship, and costs associated with hiring a marine surveyor to review the damage caused by Defendants to the boat.

WHEREFORE Plaintiff Soileau respectfully requests this Court enter judgment in his favor against Defendants on Count II of this Complaint, in an amount according to proof, together which his costs and attorney's fees incurred herein and such other and further relief this Court finds just and proper.

## COUNT III – FRAUDULENT MISREPRESENTATION

57.    Plaintiff repeats and re-alleges Paragraphs 1 through 56 as if set forth fully herein.

58.    Defendants    intentionally    and/or    recklessly    made    material misrepresentations to Soileau regarding their ability to complete certain works, and its

ability to do so in accordance with an agreed upon estimate and within a certain timeframe.

59.     Specifically, Defendants represented that they could complete the build for approximately $459,800.00 by May 2023.

60.     Defendants also represented that they had a complete and workable mold for the Libby hull.

61.     The Vessel was not finished by May 2023.

62.     Defendants did not actually start building the hull until Setember 2023.

63.     After receiving the $400,000 down payment from Plaintiff, Defendants' destroyed the Libby mold in their possession and, without telling Plaintiff, unilaterally used Plaintiff's money to create a new Libby hull mold.

64.     At the time Defendants made the aforesaid misrepresentations, they knew them to be false, or made said misrepresentations without knowledge of their truth or falsity, and/or made said misrepresentations under circumstances in which they ought to have known of their falsity.

65.     Defendants intended that their misrepresentations would induce Soileau to act thereon, hire them to complete his build, and provide payment up front.

66.     Soileau reasonably relied upon Defendants' misrepresentations and was fraudulently induced thereby to pay for services he would not receive.

67.     In addition to paying Defendants $400,000.00, Plaintiff spent $40,000.00 on commercial fishing permits that he could not use without the boat.

68.     Plaintiff also spent $200,000.00 on a new dock for unloading his catch.

69.     The dock and commercial fishing permits were explicitly purchased in anticipation of receiving this new Vessel from Defendants.

70.     Soileau would not have relied on Defendants to build his boat but for Defendants' misrepresentations.

71.     As a direct and proximate result of Defendants' misrepresentations as aforesaid, Soileau has incurred damages including, but not limited to, money paid to Defendants specifically for use on Soileau's project that was used for other purposes, costs associated with hiring a new boatyard to complete the project and remedy Defendants' poor craftsmanship, and costs associated with hiring a marine surveyor to review the damage caused by Defendants to the boat.

WHEREFORE Plaintiff Soileau respectfully requests this Court enter judgment in his favor against Defendants on Count III of this Complaint, in an amount according to proof, together which his costs and attorney's fees incurred herein and such other and further relief this Court finds just and proper.

## COUNT IV – NEGLIGENT MISREPRESENTATION

72.     Plaintiff repeats and realleges Paragraphs 1 thorough 71 as if fully set forth herein.

73.     Defendants made a false representation regarding the estimate to build Soileau's Vessel.

74.     Specifically, Defendants represented that they could complete the build for approximately $459,800.00 by May 2023.

75.     The cost of the Vessel was a material term of the parties' contract.

76.     If Defendants did not knowingly or recklessly present this lowball estimate to Plaintiff, then they failed to adequately investigate the cost to build this Vessel and provide Plaintiff with a good faith estimate.

77. Defendants' failed to exercise reasonable care or competence in creating and presenting a reasonable estimate for the cost to build the Vessel to Plaintiff.

78. Soileau relied on Defendants' representation of the cost to build his Vessel and, as a result, entered into a contract with Defendants and paid for services he would not receive.

79. As mentioned above, in reliance on Defendants' representations, Plaintiff spent significant money on commercial fishing permits and a new dock to be used for unloading catch.

80. Soileau would not have relied on Defendants to build his boat but for Defendants' misrepresentations.

81. As a direct and proximate result of Defendants' misrepresentations as aforesaid, Soileau has incurred damages, including, but not limited to, money paid to Defendants specifically for use on Soileau's project that was used for other purposes, costs associated with hiring a new boatyard to complete the project and remedy Defendants' poor craftsmanship, and costs associated with hiring a marine surveyor to review the damage caused by Defendants to the boat.

WHEREFORE Plaintiff Soileau respectfully requests this Court enter judgment in his favor against Defendants on Count III of this Complaint, in an amount according to proof, together which his costs and attorney's fees incurred herein and such other and further relief this Court finds just and proper.

## COUNT V – VIOLATION OF MAINE'S UNFAIR TRADE PRACTICES ACT 10 M.R.S. § 205-A – 214

82. Plaintiff repeats and realleges Paragraphs 1 through 81 as if fully set forth herein.

83.    Defendants repeatedly represented to Soileau that it could complete the build in accordance with a proposed time frame, consistent with the standard of care in the marine industry, and that it would perform the build for a certain price.

84.    Defendants intentionally or knowingly underquoted Plaintiff for the cost of the Build.

85.    Defendants then increased the cost of the Work performed without consulting or informing Soileau.

86.    Defendants also used Plaintiff's funds to create a new mold for a Libby hull, despite their representations that they already had the workable mold necessary to build Plaintiff's Vessel.

87.    Defendants' misrepresentations that they had the ability to perform the build at a certain price, paired with the price gouging without Soileau's knowledge or consent, amounted to an unfair or deceptive trade practice because they committed to deadlines they knew could not reasonably be met; provided services that amounted to poor craftsmanship; failed to perform certain jobs within the scope of the build; charged Soileau for work it did not do; and represented to him that they had the molds and other specialized equipment and expertise to perform the Build.

88.    Defendants' use of Plaintiff's funds to build a new mold (which is could then use to build vessel hulls for other customers at Plaintiff's expense) amounted to an unfair or deceptive trade practice because creating a new mold was not a term of the contract and Plaintiff did not consent to having his funds used in this manner, nor did he know that the mold was being recreated until after it was done.

89.     Defendants represented to Soileau that it would build a complete and seaworthy fishing boat, and then failed to perform the work for the agreed upon price in a reasonable timeframe.

90.     Defendants engaged in a deceptive trade practice when they assured Soileau they could handle this job; performed poor craftsmanship when it promised and had an obligation to perform work consistent with the standards in the maritime industry; and failed to complete the build they said they would do.

WHEREFORE Plaintiff Soileau respectfully requests this Court enter judgment in his favor against Defendants on Count IV of this Complaint, in an amount according to proof, together which his costs and attorney's fees incurred herein, including punitive damages, and such other and further relief this Court finds just and proper.

### COUNT VI – UNJUST ENRICHMENT

91.     Plaintiff repeats and realleges Paragraphs 1 through 90 as if fully set forth herein.

92.     To the extent there in not a contract, Soileau paid Defendants a large sum of money to complete the build that went unfinished.

93.     Soileau paid Defendants for quality craftsmanship, but the build was completed in a careless or incomplete manner.

94.     Soileau had to engage the services of third parties to evaluate Defendants' work, fix all issues with their work, and finish all uncompleted work.

95.     Those third parties estimate that Defendants spent less than $100,000.00 in parts, material, and labor, on the finished portions of the boat, exclusive of $150,000.00 they spent on the engine.

96.    The remaining $150,000.00 which Defendants supposedly spent on the build remains unaccounted for.

97.    Given the extent of the work that was done below the workmanlike standard, and the extent of the work that still remains to be done, Soileau suspects that some of his money was knowingly used by Defendants for personal use or other projects.

98.    Defendants have not refunded Soileau any of the money owed for the work not completed on the boat, and therefore Defendants have been unjustly enriched by failing to provide Soileau with a service in exchange for Soileau's payments.

WHEREFORE Plaintiff Soileau respectfully requests this Court enter judgment in his favor against Defendants on Count V of this Complaint, in an amount according to proof, together which his costs and attorney's fees incurred herein and such other and further relief this Court finds just and proper.

## COUNT VII – *QUANTUM MERUIT*

99.    Plaintiff repeats and realleges Paragraphs 1 through 98 as if fully set forth herein.

100.    To the extent that the Court does not find an express contract, there were nonetheless enough terms for a contract that any remaining terms can be implied in fact or in law to create a quasi-contract.

101.    Defendants were compensated for services by Soileau, and those services were not completed according to the applicable standard of care or not completed at all.

102.    Therefore, Soileau should be refunded the money that Defendants received, but did not provide any services in return.

WHEREFORE Plaintiff Soileau respectfully requests this Court enter judgment in his favor against Defendants on Count VI of this Complaint, in an amount according to

13

proof, together which his costs and attorney's fees incurred herein and such other and further relief this Court finds just and proper.

## COUNT VIII – BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

103.    Plaintiff repeats and realleges Paragraphs 1 through 102 as if fully set forth herein.

104.    Implied within the contract was a covenant of good faith and fair dealing between the parties.

105.    Defendants breached the covenant of good faith and fair dealing by failing to properly perform the Work contracted for and failing to inform Soileau of their lack of due diligence or inability to perform the Work prior to spending all of the money advanced by Soileau.

WHEREFORE Plaintiff Soileau respectfully requests this Court enter judgment in his favor against Defendants on Count VII of this Complaint, in an amount according to proof, together which his costs and attorney's fees incurred herein, including punitive damages and such other and further relief this Court finds just and proper.

Dated at Portland, Maine, this 11th day of April, 2025.

/s/ Twain Braden
Twain Braden, Esq.

/s/ Grayson Szczepaniak
Grayson Szczepaniak, Esq.
Attorneys for Plaintiff Jaime Soileau

**ARCHIPELAGO**
1 Dana Street, 4th Floor
Portland, ME 04101
(207) 558-0102
tbraden@archipelagona.com
gszczepaniak@archipelagona.com