UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAIME SOILEAU, | ) |
|       Plaintiff | ) ) ) |
| v. | ) )   No. 1:25-cv-00160-NT |
| EASTSIDE BOAT SHOP et al., | ) ) ) |
|       Defendants | ) |

**MEMORANDUM DECISION ON MOTION FOR *EX PARTE* ATTACHMENT**

Jaime Soileau seeks an *ex parte* attachment and attachment on trustee process against the assets of Eastside Boat Shop (EBS), Frank P. Coffin II, and Mandy Ramsdell-Coffin in the amount of $275,000.00. *See Ex Parte* Motion for Attachment (ECF No. 4) at 1. For the following reasons, the motion is denied without prejudice.

## I. Legal Standard

This Court applies Maine law to motions for attachment and attachment on trustee process. *See Westcor Land Title Ins. Co. v. McCarthy*, No. 2:23-cv-00026-NT, 2023 WL 4052878, at *1 (D. Me. June 16, 2023) (citation omitted); Fed. R. Civ. P. 64; Local Rule 64. To obtain an *ex parte* attachment, a plaintiff must show that

> it is more likely than not that the plaintiff will recover judgment in an amount equal to or greater than the aggregate sum of the attachment and any insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process known or reasonably believed to be available to satisfy the judgment, and that either (i) there is a clear danger that the defendant if notified in advance of attachment of the property will remove it from the state or will conceal it or will otherwise make it unavailable to satisfy a judgment, or (ii) there is immediate danger that the defendant will damage or destroy the property to be attached.

1

Me. R. Civ. P. 4A(g); *see* Me. R. Civ. P. 4B(i) (stating largely the same). *Ex parte* motions for attachment and attachment on trustee process must be supported by one or more affidavits setting forth "specific facts sufficient to warrant the required findings," and "a certificate by the plaintiff's attorney of the amount of any insurance, bond, or other security, and any other attachment or trustee process which the attorney knows or has reason to believe will be available to satisfy any judgment against the defendant[s] . . . ." Me. R. Civ. P. 4A(g), (i); *see* Me. R. Civ. P. 4B(i) (same).

## II. Background

EBS is a Maine-based corporation with its principal place of business in Machiasport. *See* Complaint (ECF No. 1) ¶ 3. Coffin is the president of EBS and directs its operations, while Ramsdell-Coffin, his wife, manages EBS's finances and processes payments from its customers in her role as secretary. *See id.* ¶¶ 4-5.

In summer 2022, Soileau hired Coffin and EBS to build him a new boat from start to finish (the "Vessel"). *See* Affidavit of Jaime Soileau (ECF No. 4-1) ¶¶ 7-10. Coffin provided an estimate that it would cost $459,800.00 to build the Vessel, and Soileau then wired him $400,000.00 so that he could begin the work. *See id.* ¶¶ 9-10. Soon thereafter, Coffin communicated to Soileau that he had ordered the bulk of the materials required to build the Vessel and represented that he would begin the work in January 2023 and have the Vessel ready by May 2023. *See id.* ¶¶ 11-12.

It was not until September 2023 that Coffin told Soileau he had begun building the Vessel's hull, the construction of which continued until January 2024. *See id.* ¶¶ 16-17. In the spring of 2024, Soileau asked Coffin whether he had

purchased the Vessel's generator and air conditioners, to which Coffin responded that he had not and that he was nearly out of money and needed another $200,000.00 to complete the build. *See id.* ¶¶ 18-19. Soileau separately purchased and shipped the generator and air conditioners to EBS, but Coffin communicated that he still needed more money to complete the build because the cost of materials had drastically increased, despite the fact that he had previously told Soileau that he had purchased most of the necessary materials for the Vessel in September 2022. *See id.* ¶¶ 21-22.

In light of the delays and Coffin's misrepresentations, Soileau told Coffin to stop work on the Vessel and that he would transfer the hull to another boatbuilder to be finished. *See id.* ¶ 23. When Coffin then ceased responding to Soileau's phone calls and text messages, Soileau hired an attorney to force Coffin to release the unfinished Vessel. *See id.* ¶¶ 24-25. Coffin finally agreed to release the Vessel for a payment of $20,000.00, following which Soileau transported it from EBS to Taylored Boats. *See id.* ¶¶ 25-26. Soileau hired Peter Taylor, the owner of Taylored Boats, to finish building the Vessel, and hired Jason Hillman, a marine surveyor, to examine the unfinished Vessel and provide an assessment of EBS's work. *See id.* ¶¶ 27-28.

Taylor and Hillman agreed that EBS could not have built the Vessel for the original quoted amount, and that it would actually cost at least $800,000.00. *See* Affidavit of Peter Taylor (ECF No. 4-2) ¶¶ 31-33; Affidavit of Jason Hillman (ECF No. 4-3) ¶¶ 10-14. They estimated the value of the unfinished Vessel to be at least $250,000.000. *See* Taylor Aff. ¶¶ 7-9; Hillman Aff. ¶ 5. Hillman also stated that EBS could not have exhausted the $420,000.00 Soileau paid on constructing the

unfinished hull and purchasing and installing the Vessel's equipment. *See* Hillman Aff. ¶ 7. Based on these opinions, Soileau believes Coffin underestimated the Vessel's cost to attract his business and then used his money to fund other interests. *See* Soileau Aff. ¶¶ 30, 35-36. Soileau also discovered that EBS invoiced him over $10,000.00 more than the true cost of the Vessel's engine package. *See id.* ¶¶ 32-34.

On April 11, 2025, Soileau filed a complaint against the Defendants alleging the following counts: (1) breach of contract; (2) breach of the implied warranty of workmanlike performance; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) violation of Maine's Unfair Trade Practices Act, 5 M.R.S. §§ 205-a to 214; (6) unjust enrichment; (7) quantum meruit; and (8) breach of the covenant of good faith and fair dealing. *See* Complaint ¶¶ 46-105.

### III. Discussion

The instant motion fails for two reasons. First, Soileau's counsel neglected to comply with the Me. R. Civ. P. 4A(g) and Me. R. Civ. P. 4B(i) requirement that they file a certificate outlining the amount of any security, attachment, or trustee process available to satisfy a judgment. *Cf. Chase v. Merson*, No. 2:18-cv-00165-NT, 2019 WL 346397, at *2 (D. Me. Jan. 28, 2019) (noting that the plaintiff filed a certificate from his attorney and an affidavit with his *ex parte* motion for attachment).

Second, Soileau has not set forth sufficient facts to show that, if the Defendants are notified of the requested attachment in advance, there is a (1) "clear danger" that they will conceal their property, remove it from Maine, or otherwise make it unavailable to satisfy a judgment in this case, or an (2) "immediate danger" that they

will destroy or damage it.  Me. R. Civ. P. 4A(g); Me. R. Civ. P. 4B(i).  Soileau's argument collapses these two inquiries and improperly "relies on the presupposition that past is prologue."  *Chase*, 2019 WL 346397, at *3.  He contends a danger exists that the Defendants will conceal, destroy, or remove their assets from Maine because they were avoidant and nontransparent in their prior business dealings with him and likely mismanaged his money purposefully to fund their own interests.  *See* Motion at 14-15.  This Court has repeatedly held that a plaintiff's personal belief or assumption that the defendants will make otherwise attachable assets unavailable, without more, is "too thin a reed on which to predicate an *ex parte* attachment."  *Chase*, 2019 WL 346397, at *3 (collecting cases).

Because Soileau failed to satisfy either of the danger prongs, I need not determine whether he has shown, by a preponderance of the evidence, that he is more likely than not to recover judgment equal to or greater than the sum he seeks to attach.  *See J.J.R. Distrib. Corp. v. Sandler Bros.*, 645 F.Supp.2d 25, 28 (D. Me. 2009).

## IV.  Conclusion

For the aforementioned reasons, the motion is **DENIED** without prejudice.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.*

Dated: May 6, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge