UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| JAIME SOILEAU, | ) |
| | ) |
|       Plaintiff | ) |
| | ) |
| v. | )  No. 1:25-cv-00160-JAW |
| | ) |
| EASTSIDE BOAT SHOP et al., | ) |
| | ) |
|       Defendants | ) |

**ORDER ON MOTION FOR ATTACHMENT**

Jaime Soileau filed a motion for attachment and attachment on trustee process seeking court approval to attach the property of Eastside Boat Shop (EBS), Frank P. Coffin II, and Mandy Ramsdell-Coffin in the amount of $275,000. *See* Motion (ECF No. 7) at 1. For the following reasons, attachment is approved as to EBS but denied as to the individual defendants.

## I. Background

EBS is a Maine-based corporation with its principal place of business in Machiasport. Complaint (ECF No. 1) ¶ 3. Coffin is the president of EBS and directs its operations, while Ramsdell-Coffin, his wife, manages EBS's finances and serves as the company's secretary. *Id.* ¶¶ 4-5. In summer 2022, Soileau contracted with EBS to build a new boat (the "Vessel") from start to finish. Jaime Soileau Affidavit (ECF No. 7-1) ¶¶ 7-10. Coffin provided a written estimate of $459,800 to build the Vessel, and Soileau wired him $400,000 to begin work. *Id.* ¶¶ 9-10.

1

Soon thereafter, Coffin told Soileau that he had ordered the bulk of the materials needed to build the Vessel and that he would begin construction in January 2023, with the Vessel ready by May 2023. *Id.* ¶¶ 11-12. In anticipation of taking delivery of the Vessel, Soileau spent approximately $40,000 on fishing permits and $200,000 on an unloading dock. *Id.* ¶ 15. It was not, however, until September 2023 that Coffin confirmed with Soileau that he had begun construction of the hull, which continued until January 2024. *Id.* ¶¶ 16-17. In the spring of 2024, Soileau asked Coffin whether he had purchased the Vessel's generator and air conditioners. *Id.* ¶¶ 18-19. Coffin responded that he had not, that the money from the first deposit was nearly exhausted, and that he needed another $200,000 to complete construction of the Vessel. *Id.* Soileau separately purchased and shipped the generator and air conditioners to EBS for $21,500. *Id.* ¶ 21. Coffin continued to insist that he needed more money to complete the build. *Id.* ¶ 22.

A short time later, communication broke down, and Soileau told Coffin to stop work on the Vessel and that he would transfer the hull to another boatbuilder. *Id.* ¶¶ 23-24. Coffin agreed to release the Vessel in exchange for $20,000, and Soileau transported it from EBS to Taylored Boats. *Id.* ¶¶ 25-26. During this process, Soileau noticed an unexpected surcharge of roughly $10,000 for the purchase and installation of the Vessel's engine while at EBS. *See id.* ¶¶ 32-34. Soileau hired Peter Taylor, owner of Taylored Boats, to finish the build and Jason Hillman, a marine surveyor, to assess the unfinished Vessel. *See id.* ¶¶ 27-28. Taylor and Hillman agreed that EBS could not have built the Vessel in its final format for the original quote, and it

2

would cost at least $800,000 to build the Vessel that Soileau expected. *See* Peter Taylor Affidavit (ECF No. 4-2) ¶¶ 31-33; Jason Hillman Affidavit (ECF No. 4-3) ¶¶ 10-14. They estimated the unfinished Vessel's value at around $250,000. *See* Taylor Aff. ¶¶ 7-9; Hillman Aff. ¶ 5. Hillman stated that EBS could not have exhausted $420,000 on the existing build. *See* Hillman Aff. ¶ 7.

On April 11, 2025, Soileau filed a complaint against the Defendants alleging the following counts: (1) breach of contract; (2) breach of the implied warranty of workmanlike performance; (3) fraudulent misrepresentation; (4) negligent misrepresentation; (5) violation of Maine's Unfair Trade Practices Act, 5 M.R.S.A. §§ 205-a to 214; (6) unjust enrichment; (7) quantum meruit; and (8) breach of the covenant of good faith and fair dealing. *See* Complaint ¶¶ 46-105. Soileau filed an ex parte motion for attachment with his complaint. ECF No. 4. I denied that motion in May 2025. ECF No. 6. Soileau then filed the motion for attachment now before the Court. ECF No. 7.

## II. Discussion

A court may award attachment of property and attachment on trustee process "in accordance with state law and procedure as would be applicable had the action been maintained in the courts of the State of Maine." Local Rule 64; *see also* Fed. R. Civ. P. 64 ("At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment."). "An attachment of property shall be sought by filing, with the complaint or during the

3

pendency of the action, a motion for approval of the attachment. The motion shall be supported by affidavit . . . meeting the requirements set forth in subdivision (i) of this rule." M.R. Civ. P. 4A(c); *see also* M.R. Civ. P. 4B(c) (outlining the same process for attachment on trustee process). The affidavit must "set forth specific facts sufficient to warrant the required findings." *Id*. The specific facts must establish that

> it is more likely than not that the plaintiff will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment and any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment.

M.R. Civ. P. 4A(c); *see also* M.R. Civ. P. 4B(c) (outlining the same process in the attachment on trustee process).

Attachment may only be awarded after notice to the defendants and hearing, unless

> the defendant is deemed to have waived all objection to the motion as provided in Rule 7(c) for failure to file opposition material within the time therein provided or as extended, the court shall, without hearing, upon a finding that the plaintiff is entitled to an attachment under the terms of this subdivision (c), enter an order of approval of attachment in an appropriate amount.

*Id*. A court "entertaining a motion for attachment reviews and assigns weight to affidavit evidence in the same manner that it does with other evidence," *Wilson v. DelPapa*, 634 A.2d 1252, 1254 (Me. 1993), but need not resolve all factual disputes or resolve complex legal issues in a summary proceeding, *Porrazzo v. Karofsky*, 1998 ME 182, ¶ 7, 714 A.2d 826.

Here, because the Court granted Soileau's motion for entry of default against EBS, *see* ECF No. 25, and no lawyer has entered an appearance for the business, EBS has waived all objection to the motion for failure to file opposition material within the time provided, and no hearing is necessary for a ruling on the motion as to the business. *See* M.R. Civ. P. 4A(c), 4B(c). As to the individual defendants, however, a hearing would be necessary before granting any attachment against their personal assets, as they have objected to the motion and filed unsworn materials in support thereof. *See id.*; ECF Nos. 26, 31. Therefore, I proceed separately with the analyses for EBS and the individual defendants.

### A. Attachment as to EBS

Although EBS has waived objection to the motion for failure to file opposition material, I still must independently evaluate whether it is more likely than not that Soileau will recover judgment, including interest and costs, in an amount equal to or greater than the aggregate sum of the attachment. *See* M.R. Civ. P. 4A(c), 4B(c).

Based on the following analysis, attachment is warranted for two reasons. First, Soileau moved for an entry of default against EBS, which I granted in August after EBS failed to file a responsive pleading. ECF No. 25. Soileau then filed his first motion for default judgment in September. ECF No. 30. The Coffins have repeatedly represented to the Court that they cannot retain counsel for EBS. *See, e.g.*, ECF Nos. 19, 31. Because corporations may not appear pro se, *see Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993), and there is no

indication that EBS will retain counsel, I conclude that it is more likely than not that Soileau will recover judgment against EBS.

Second, based on Soileau's affidavits filed in support of his motion for attachment, I conclude it is more likely than not that he will receive judgment in an amount equal to or greater than the aggregate sum of the attachment, $275,000.[1] The same findings apply to the request for attachment on trustee process. *See Lucas v. RedCoral Invs. LLC*, No. 1:24-cv-00350-JAW, 2024 WL 4817463, at *3 (D. Me. Nov. 18, 2024). The affidavits aver that the commercial relationship between EBS and Soileau broke down following EBS's failure to produce the Vessel within the agreed-upon timeframe. Soileau incurred significant expenses in reliance upon EBS's representations. Therefore, after considering the expenses outlined in the motion, *see* Motion at 5, plus interest and costs, I conclude that it is more likely than not that Soileau will recover judgment in an amount equal to or greater than the aggregate sum. Therefore, I approve attachment and attachment on trustee process in the amount of $275,000 for EBS.

### B. Attachment as to the Individual Defendants

Soileau has not made the required showing for attachment and trustee process as to Frank P. Coffin II and Mandy Ramsdell-Coffin. The allegations in the complaint and the supporting affidavits demonstrate a dispute between a business and its customer. Such a dispute, by itself, does not warrant abandoning the traditional

---

[1] At this point there is no evidence in the record of "any liability insurance, bond, or other security, and any property or credits attached by other writ of attachment or by trustee process shown by the defendant to be available to satisfy the judgment." M.R. Civ. P. 4A(c); *see also* M.R. Civ. P. 4B(c) (same for attachment on trustee process).

6

protections against owner liability afforded by a corporate structure. *See Bonnar-Vawter, Inc. v. Johnson*, 173 A.2d 141, 145 (Me. 1961) ("The doctrine of corporate entity is one of substance and validity; it should be ignored with caution, and only when the circumstances clearly justify it." (cleaned up)); *Theberge v. Darbro, Inc.*, 684 A.2d 1298, 1301 (Me. 1996) ("It is well established that corporations are separate legal entities with limited liability." (cleaned up)); *LaBelle v. Crepeau,* 593 A.2d 653, 655 (Me. 1991) ("One of the principal benefits offered by the corporate form of organization is limited liability for shareholders.").

Under Maine law, there is a two-part test that must be satisfied "before a court may pierce the corporate veil."[2] *Johnson v. Exclusive Props. Unlimited*, 1998 ME 244, ¶ 6, 720 A.2d 568. In particular, "a plaintiff must establish that: (1) the defendant abused the privilege of a separate corporate identity; and (2) an unjust or inequitable result would occur if the court recognized the separate corporate existence." *Id.* This analysis requires balancing "the policy of encouraging business development with the policy of protecting those who deal with the corporation." *Id.*

To disturb that balance in favor of individual liability, Soileau must demonstrate that the individual defendants abused the corporate privilege and that piercing the privilege is in the interest of justice. *Id.* Although fraud or illegality is not required, *see Anderson v. Kennebec River Pulp & Paper Co.*, 433 A.2d 752, 756 n.5 (Me. 1981), Soileau must make some showing of abuse and injustice before I can

---

[2] "Whether to pierce the corporate veil is a matter of state law." *Smith v. Devine*, 126 F.4th 331, 346 (4th Cir. 2025).

7

determine that it is more likely than not that he will recover judgment against the Coffins individually.

Additionally, even if some of the claims can be brought against the Coffins without piercing the corporate veil (e.g., fraudulent misrepresentation; negligent misrepresentation; and violations of the Maine Unfair Trade Practices Act, 5 M.R.S.A. §§ 205-A to 214)[3] there are insufficient facts to demonstrate that Soileau is more likely than not to receive judgment.  On the record before me, I cannot conclude that the Coffins are likely liable for their individual acts arising out of Soileau's commercial relationship with EBS.  The record does not establish the intent necessary for fraud, that the Coffins failed to exercise reasonable care in their communications with Soileau, or that the Coffins' conduct was so deceptive as to create personal liability under the Unfair Trade Practices Act.  *See Tinkham v. Perry*, No. 1:12-CV-00229-GZS, 2014 WL 102207, at *2 (D. Me. Jan. 9, 2014) ("There are just too many unanswered questions at this juncture for me to find that it is more likely than not that" the plaintiff would recover more than the requested amount.).  Ultimately, the record shows a dispute between EBS and its customer, but it does not present facts sufficient to approve the attachment of the Coffins' personal assets.

---

[3] "The individual liability stems from participation in a wrongful act, and not from facts that must be found in order to pierce the corporate veil.  Corporate employees who commit an unfair trade practice within the scope of their employment can also be held personally liable." *Advanced Const. Corp. v. Pilecki*, 2006 ME 84, ¶ 13, 901 A.2d 189 (citation omitted).

### III. Conclusion

For the foregoing reasons, I **GRANT** the motion for attachment and attachment on trustee process as to EBS in the amount of $275,000 and **DENY** the motion as to Frank P. Coffin II and Mandy Ramsdell-Coffin.

### *NOTICE*

*In accordance with Federal Rule of Civil Procedure 72(a), a party may serve and file an objection to this order within fourteen (14) days after being served with a copy thereof.*

*Failure to file a timely objection shall constitute a waiver of the right to review by the District Court and to any further appeal of this order.*

Dated: December 5, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge